Vance O. Knapp, SBN 027822
FISHER & PHILLIPS LLP
1125 17th Street, Suite 2400
Denver, Colorado 80202
Telephone: (303) 218-3656
Facsimile:  (303) 218-3651
vknapp@fisherphillips.com
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Adam Friedlander, an Arizona Resident, Individually and on Behalf of all Others Similarly Situated, | No.:  23-cv-02173-PHX-DLR |
|---|---|
| Plaintiff, | **DEFENDANT LOANDEPOT.COM LLC'S MOTION AND MEMORANDUM TO DISMISS UNDER FED. R. CIV. P. 12 (B) (1) AND TO COMPEL ARBITRATION** |
| v. | |
| LoanDepot.com LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

Defendant LoanDepot.com LLC (hereinafter, "loanDepot" or the "Company"), through its undersigned counsel, hereby submits this Motion and Memorandum to Dismiss Under Rule 12 (b) (1) of the Federal Rules of Civil Procedure and to Compel Arbitration ("Motion to Compel"). loanDepot respectfully requests that the Court dismiss this case and compel arbitration in accordance with Plaintiff's Mutual Arbitration Agreement with Defendant loanDepot, or in the alternative, stay this case pending the completion of arbitration.

/ / /

/ / /

/ / /

/ / /

1

**CERTIFICATION PURSUANT TO LRCiv 12.1(c) and JUDGE RAYES' ORDER FILED OCTOBER 19, 2023 [DOC. 5]**

On Thursday, November 30, 2023, undersigned counsel sent Plaintiff's counsel an email conferring about the relief requested in this Motion to Compel, together with a copy of Friedlander's Mutual Arbitration Agreement. ***See* Ex. 1 [Arbitration Agreement].** On Friday, December 1, 2023, Plaintiff's counsel replied via email that he would be reviewing the Arbitration Agreement with his client and would respond as soon as possible. Plaintiff's counsel also inquired about whether the other opt-in plaintiffs also had arbitration agreements. At 11:35 a.m. on Monday, December 4, 2023, undersigned counsel sent Plaintiff's counsel copies of the arbitration agreements for the opt-in plaintiffs that had filed consents (to date) to join this case and his client's position regarding this Motion.  At 3:19 p.m. on December 4th, undersigned counsel left a voicemail message with Plaintiff's counsel informing him that LoanDepot intended to file this Motion to Compel at 4:00 p.m. Mountain Time, and would notify the Court in this Certification that Plaintiff's counsel has not responded with his client's position as to the relief requested herein. At 4:03 p.m., Plaintiff's counsel sent undersigned counsel an email stating that he had not yet been able to confer with the Plaintiff.

**INTRODUCTION AND STATEMENT OF FACTS**

The Court should compel Plaintiff Adam Friedlander ("Friedlander" or "Plaintiff") to pursue his claims in arbitration and dismiss his complaint pursuant to Fed. R. Civ. P. 12 (b) (1). Friedlander's Complaint alleges one claim for Failure to Pay Overtime Wages under 29 U.S.C. § 207 of the Fair Labor Standards Act ("FLSA").

loanDepot is an industry-leading nonbank consumer lender offering home mortgage, refinance and home equity loan products to customers in all 50 states. ***See* ¶ 3, Decl. of Kylie Schumacher, Ex. 2**. loanDepot communicates with its customers across the country via telephone and interstate mail. *Id*. In addition, loanDept engages in advertising and marketing activities throughout the U.S. using interstate media. *Id*. To date, loanDepot has funded billions of dollars in consumer loans, mortgage refinances,

and new home purchases throughout the U.S. *Id*.

On or about September 21, 2011, loanDepot hired Friedlander as a Loan Consultant that is a licensed mortgage loan originator. *See* **¶ 4, Ex. 2**. Friedlander resigned from loanDepot on April 3, 2023. *Id.*

On February 27, 2019, Friedlander executed the Mutual Arbitration Agreement (the "Arbitration Agreement") using DocuSign, which was sent to him by loanDepot via Workday. *See* **p. 5, Ex. 1 and ¶ 5, Ex. 2**. The Arbitration Agreement included a cover letter and a Question and Answer memorandum explaining the arbitration process and the waiver of class and collective claims prepared by Peter MacDonald, loanDepot EVP, General Counsel ("Arbitration Packet"). *Id*. The Arbitration Packet was sent to employee's personal email account addresses that they provided to loanDepot. *See* **¶ 5, Ex. 2**. Only Friedlander could access the Arbitration Packet sent to his personal Workday account using his personal email address and password that he had set up for his personal email account. *Id*. loanDepot did not request or have access to the unique passwords set up by Friedlander or any of its other employees for their personal Workday accounts, and did not have access to Friedlander's Workday account. *Id*.

The Arbitration Packet consisted of a cover memorandum that advised Friedlander:

> You are not giving up all your rights, but only agreeing that both you and the Company will give up the right to have disputes heard by a judge and/or jury in court. You also give up your right to file or participate in a class or collective action, and to the extent allowed by law, a representative action, including pending actions. However, you can still file any individual claims against the Company in arbitration or with an administrative agency.

*See* **p. 2 [Questions and Answers] Ex. 1 and ¶ 6, Ex. 2**.

The cover memorandum of the Arbitration Packet also included a space for Friedlander's printed and signed electronic signature acknowledging receipt of the cover memorandum. *See* **¶ 6, Ex. 2**.

The Arbitration Packet included a written list of common questions and answers about loanDepot's Arbitration Agreement, which called Plaintiff's attention to the other

3

important aspects of the Agreement, including the following:

> **Who will run the arbitration?** A company called JAMS, whose website is at http://www.jamsadr.com/rulesemployment-arbitration. You can obtain the JAMS Rules from that website, or upon written request to Peter Macdonald by email at legal-arbitration@loandepot.com. There will be no retaliation against you if request a copy of the JAMS Rules.
> **Who pays the cost of arbitration?** The Company will pay the arbitrator's fees and any other administrative fees unique to arbitration.
>
> **Can I still receive a similar award in arbitration that I would receive in court action?** An arbitrator is entitled to award relief that is similar to the relief available to you in court.
>
> **What claims are not covered by the Agreement?** The Agreement only covers claims that can be arbitrated under the law. For example, workers compensation claims are not subject to arbitration, so they are not covered by this Agreement.

*See* **Ex. 1 [Questions and Answers] and ¶ 6, Ex. 2**.

The Arbitration Agreement provides for binding, mutual arbitration before a single arbitrator chosen by the parties in accordance with the JAMS Employment Arbitration Rules & Procedures then in effect. *See* **§ 2, Ex. 1 [https://www.jamsadr.com/rules-employment-arbitration/english#Rule-11] and ¶ 9, Ex. 2**. The Agreement further provides that loanDepot will pay the arbitrator's fees and any other administrative fees unique to arbitration. *Id.* at Ex. 1. Furthermore, the Arbitration Agreement states that the arbitrator is authorized to award all remedies available under the law, including attorneys' fees and costs to the prevailing party. *Id.* The Arbitration Agreement also requires the arbitrator to issue a written award stating the reasons for the final ruling. *Id.*

Friedlander agreed ". . . to arbitrate all Claims, as defined in Section 3 of this Agreement, the Parties may have against each other." *See* **§ 1, Ex. 1**.

> Section 3 of the Arbitration Agreement provides, in part,
> Claims. The claims covered by this Agreement, and subject to arbitration, include but are not limited to all past, present, future claims, including any currently pending litigation and/or class/collective/representative actions against the Company, for claims of: wrongful termination; discrimination; harassment; retaliation; breach of contract/covenant; trade secrets; emotional distress; fraud; misrepresentation; defamation; tort claims; ***wage and hour***

> *claims including but not limited to claims of: minimum wage, off the clock work, overtime, bonuses, meal/rest periods, wage statements, reimbursement, penalties, benefits* . . .

See **Ex. 1**. (Emphasis added.)

The Arbitration Agreement also contains a Class and Collective or Representative Waiver,

> <u>No Class, Collective or Representative Actions</u>. The Parties Agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate in any pending or future representative action against the other, except to the extent this provision is unenforceable under the law, including any currently pending actions at the time this Agreement is executed by you. ***The Parties agree that a court, not an arbitrator, shall determine whether class or collective actions are authorized in arbitration by this Agreement. The Parties agree that any class or collective claims that are found not subject to arbitration under this Agreement shall be resolved in court, and are stayed pending the outcome of the arbitration***.

*Id.* at § 6. (Emphasis added.)

Under Section 10 of the Arbitration Agreement,

> ***The Parties agree that the Company is engaged in transactions involving interstate commerce, and this Agreement shall be enforced under the substantive and procedural provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, <u>et</u> <u>seq</u>***. This Agreement supersedes any prior written and/or verbal agreements concerning arbitration between the Parties. The Parties confirm that they have read the Memorandum and list of Questions & Answers dated September 24, 2018, explaining the arbitration process.

*Id.* **at § 10**. (Emphasis added.)

The Arbitration Agreement provides for application of the substantive and procedural provisions of the Federal Arbitration Act, given loanDepot's acknowledged participation in interstate commerce. *See* **§ Ex. 1 and ¶ 14, Ex. 2**. Friedlander also signed acknowledgments expressly confirming that he had an opportunity to review the Agreement prior to signing, and that he agreed to arbitrate any claims he might have against loanDepot (except for claims that cannot be arbitrated under the law). *See* **§ Ex. 1 and ¶ 14, Ex. 2**.

I. **LEGAL ANALYSIS**

A. **LEGAL STANDARD**

Section 2 of the Federal Arbitration Act ("FAA") states that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp.*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56. Fed. R. Civ. P." *Coup v. The Scottsdale Plaza Resort, LLC,* 823 F.Supp.2d 931, 939 (D. Ariz. 2011). "'If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury.'" *Id.* (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1141 (9th Cir. 1991)). Thus, "'[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" *Id.* (quoting *Three Valleys,* 925 F.2d at 1141).

B. **PLAINTIFF MUST ARBITRATE HIS CLAIMS AGAINST LOANDEPOT.**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1. Under the FAA, arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract. *Id.* at § 2. The FAA's provisions "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA further requires a court, "on application of one of the parties [to the litigation]" to stay the action if it involves "an issue referable to arbitration under an agreement in writing." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-32 (2009) (citing 9 U.S.C. § 3). The FAA, which "declare[s] a national policy favoring arbitration," *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984), provides that a "written provision in... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

It is well settled that "the substantive law the Act created [is] applicable in state and federal courts." *Southland Corp., supra,* at 12; *see also Buckeye Check Cashing, Inc., v. Cardegna,* 546 U.S. 440, 446 (2006). And when parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court." *Preston v. Ferrer,* 552 U.S. 346, 349 (2008); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967). For these purposes, an "arbitration provision is severable from the remainder of the contract," *Buckeye, supra,* at 445, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.

Finally, in determining the validity of an agreement to arbitrate, federal courts should apply ordinary state law principles that govern the formation of contracts. *See Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 994 (9th Cir. 2010).

> **1.   *The Arbitration Agreement is Governed by the FAA.***

"The FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts." *S. Cal. Edison Co. v. Peabody W. Coal Co.,* 977 P.2d 769, 773 (Ariz. 1999). The FAA also applies to arbitration agreements in employment contracts. *See Circuit City*

*Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).

In this case, the Parties expressly agreed that the Arbitration Agreement would be governed by the FAA. ***See* § 10, Ex. 1; and ¶ 5, Ex. 2**. Moreover, loanDepot is engaged in interstate commerce throughout the U.S. and has funded billions of dollars in consumer loans, mortgage refinances, and new home purchases throughout the U.S. ***See* § Ex. 1, and ¶ 3, Ex. 2**.

### 2. *The Arbitration Agreement is a Valid and Binding Contract.*

The Arbitration Agreement at issue in this case is an enforceable contract that the Court should uphold in compelling arbitration. In determining whether a valid arbitration agreement exists between the parties, ordinary contract principles apply. *See Estate of Decamacho ex rel. v. La Solana Care & Rehab, Inc.,* 316 P.3d 607, 610 (Ariz. App. 2014). To create a valid enforceable contract, there must be "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. App. 2019).

Here, on February 27, 2019, Friedlander and loanDepot's General Counsel signed the Arbitration Agreement. ***See* § Ex. 1 and ¶ 5, Ex. 2.** The Arbitration Agreement is supported by both mutuality and consideration. The Arbitration Agreement requires both parties to resolve their claims through arbitration, not just the Plaintiff. ***See* § 1, Ex. 1**. Therefore, the Arbitration Agreement is bilateral, not unilateral. *See Taylor v. Kingman Feldspar Co.,* 18 P.2d 649 (Ariz. 1933) ("Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only. And conversely, a contract is not unilateral where it contains mutual obligations binding on both parties."). The Parties bilateral, mutually binding promise provides sufficient consideration to support the enforcement of the Arbitration Agreement. *See Carroll v. Lee,* 712 P.2d 923, 926 (Ariz. 1986) ("Clearly a promise for a promise constitutes adequate consideration."); *see also Best Choice Fund, LLC v. Low & Childers, P.C.,* 269 P.3d 678, 689 (Ariz. App. 2011) ("When a contract contains mutual promises and is in writing, consideration will almost always be adequate.").

Thus, the Arbitration Agreement is a mutually binding, enforceable contract.

### 3. *Plaintiff's FLSA Claim Falls within the Scope of the Arbitration Agreement.*

Friedlander asserts a single claim for relief in his Complaint for Failure to Pay Overtime Wages under 29 U.S.C. § 207 of the FLSA, this claim falls squarely within the scope of the Arbitration Agreement. "The scope of an arbitration agreement is governed by federal substantive law." *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" *Chiron Corp. v. Ortho Diagnostics Sys., Inc.,* 207 F.3d 1125, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, Section 3 of the Arbitration Agreement specifically refers to FLSA claims, including "wage and hour claims . . . [and] overtime [claims]" that are subject to arbitration under the Agreement. *See* **§ 3, Ex. 1**. Moreover, Section 3 of the Arbitration Agreement encompasses all of these claims regardless of whether they occurred in the past, present, future claims, including any currently pending litigation and/or/class/collective/representative actions against loanDepot. *Id*.

### 4. *Plaintiff's Collective Action Complaint is Subject to Arbitration.*

Similarly to finding that the Arbitration Agreement is a valid and enforceable contract, the Court should also find that the Parties agreed to only litigate their "Claims" on an individual basis.

"While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). For that reason, "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* (quoting *Volt*, 489 U.S. at 479). Parties are therefore "generally free to structure their

arbitration agreements as they see fit." *Stolt-Nielsen S.A.,* 559 U.S. at 683 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). This means, among other things, that "parties may specify *with whom* they choose to arbitrate their disputes." *Id.* "From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A.,* 559 U.S. at 684. (Emphasis added.)

Here, the Parties did not agree to submit to class arbitration in this case. Importantly, the Arbitration Agreement explicitly and specifically precludes the arbitration of class claims. ***See § 7, Ex. 1*** ("The Parties agreed that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a class member in any pending or future class and/or collective action against each other . . .")). This provision is valid and binding. *See Epic Sys.*, 138 S. Ct. 1612 (Provision of NLRA, which guarantees to workers the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, does not reflect a clearly expressed and manifest congressional intention to displace the Federal Arbitration Act (FAA) and to outlaw class and collective action waivers; NLRA does not express approval or disapproval of arbitration, and it does not even hint at a wish to displace the FAA); *Concepcion*, 563 U.S. 333.

### 5. *The Parties Delegated Questions of Arbitrability to the Arbitrator.*

There is no legitimate dispute that the parties agreed to arbitrate their disputes and that the Agreement covers Plaintiff's claims. ***See § 1, Ex. 1 and ¶ 14, Ex. 2***. To the extent there is such dispute, the Agreement provides that "the Parties agree any arbitration shall be conducted before one neutral arbitrator selected by the Parties under the JAMS Employment Arbitration Rules & Procedures." ***See § 2, Ex. 1 and ¶ 8, Ex. 2***.

The JAMS Rules delegate to the arbitrator the responsibility for adjudicating "arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement." ***See § 2, JAMS Rule 11(b)***. The Supreme Court has upheld such delegation provisions, explaining that "parties can agree to arbitrate 'gateway' questions of 'arbitrability.'" *Rent-A-Ctr, West, Inc. v. Jackson,* 561 US 63, 68-

69 (2010) (citation omitted); *Caremark LLC v. Chicksaw Nation,* 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center, W., Inc*., 561 U.S. at 68- 69 ("A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability . . .").

Because the Agreement provides that the dispute can be submitted to binding arbitration under the existing JAMS Employment Arbitration Rules and Procedures, Plaintiff and loanDepot "agree[d] to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement." ***See* § 2, Ex. 1 and JAMS Rule 11 (b)**. Therefore, to the extent Plaintiff attempts to dispute the existence of any agreement to arbitrate or the arbitrability of a particular claim, the responsibility for resolving such disputes is expressly (and validly) delegated to the arbitrator.

**C.  THERE ARE NO GROUNDS TO VOID FRIEDLANDER'S ARBITRATION AGREEMENT**.

The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S 213, 219 (1985). The court's role under the FAA, therefore, is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

The only way Plaintiff can avoid arbitration is if his claims fall within one of the narrow exceptions to the FAA's rule requiring arbitration. *See* 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (holding that arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress or unconscionability"). None of these grounds exist for revoking or voiding the Arbitration

Agreement.

### 1. *Friedlander Did Not Sign Under Fraud or Duress.*

Friedlander's Complaint does not reference the existence of the Arbitration Agreement. *See* Dkt. #001. Nothing about the Arbitration Agreement was untrue, inaccurate, or deceptively misleading. *See* ¶ 16, Ex. 2. loanDepot sent the Arbitration Agreement to Plaintiff electronically; he was able to review the terms of the Agreement in the comfort of his own home and at his leisure. *Id*.

### 2. *The Arbitration Agreement Is Not Procedurally Unconscionable.*

"Unconscionability is a generally applicable contract defense that may render an arbitration agreement unenforceable under the FAA and it is determined according to the laws of the state of contract formation. *Edwards v. Vemma Nutrition,* 2018 WL 637382, *4 (D. Ariz. 2018). "Under Arizona law, the plaintiff bears the burden of proving the unenforceability of an arbitration provision, and the determination is made by the Court as a matter of law." *Id*.

Procedural unconscionability "arises from unfairness in the bargaining process" and "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Id.* Thus, "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement. Moreover, an agreement may be enforceable even if the terms offered are not negotiable. Even if the weaker party does not understand all of the terms included in an agreement, the agreement may be enforceable if it is consistent with reasonable expectations and not unduly oppressive." *EEOC v. Cheesecake Factory, Inc.*, 2009 WL 1259359, *3 (D. Ariz. 2009) (citations omitted). "[T]he fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts." *Duenas v. Life Care Centers of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014).

Here, the Arbitration Agreement and explanatory cover letter and list of Questions and Answers transmitted with it are written in plain, straightforward language, with no

confusing legal jargon or Latin terms of art. *See* **Ex. 1**. The subject line at the top of the cover memo states "Mutual Arbitration Agreement." *Id.* at p. 1 (underlining in original). The written list of common questions and answers sent contemporaneously with the Arbitration Agreement explains in lay terms what arbitration is and how the arbitration process works. *Id.* at p. 2. The Arbitration Agreement itself is in a stand-alone document titled (in all caps and in bold with underlining) "**ARBITRATION AGREEMENT**" *Id.* at p. 3. Friedlander also signed an acknowledgment expressly confirming that she understood he had signed the Arbitration Agreement. *Id.* at p. 6. These additional pieces of information and communication to Plaintiff far exceed the minimum requirements that Arizona courts have routinely found to be sufficient against attempts to invalidate for unconscionability. Additionally, as noted above, Friedlander was not "under the gun" to review and sign the Arbitration Agreement. *See* **¶ 16, Ex. 2**. Friedlander was also encouraged to ask any questions he might have about the arbitration process (and was given the email address to submit questions to), and was informed that there would be no retaliation against him if he asked any questions about the Arbitration process. *See* **p. 1, Ex. 1**; *see e.g., Longnecker v. Am. Express Co.,* 23 F. Supp. 3d 1099, 1108 (D. Ariz. 2014) (rejecting procedural unconscionability challenge, where employees argued "they were required to agree to the Arbitration Policy as a condition of employment . . . because "even if the arbitration agreements were contracts of adhesion that would not mean that they are procedurally unconscionable").

Given the facts, Friedlander cannot claim that the Arbitration Agreement is significantly procedurally unconscionable.

### 3. *The Arbitration Agreement Is Not Substantively Unconscionable.*

Plaintiff cannot demonstrate that the Arbitration Agreement is substantively unconscionable. There is nothing overly harsh or one-sided about the terms. Substantive unconscionability "is concerned with the relative fairness of the actual contract terms." *Edwards,* 2018 WL 637382, *4.

Here, the obligation to arbitrate is imposed equally on loanDepot and Friedlander.

13

*See* ¶ **9, Ex. 2 and § 1, Ex. 1**. The parties' agreement calls for the mutual selection of a neutral arbitrator in accordance with the JAMS Employment Arbitration Rules & Procedures then in effect. *See* **§ 1, Ex. 1**.

Furthermore, loanDepot is paying "the arbitrator's fees and any other administrative fees unique to the arbitration." *See* **p. 2, Ex. 1 [Questions and Answers]**. *See Harrington v. Pulte Home Corp.,* 119 P.3d 1044, 1056 (Ariz. App. 2005) (arbitration clause in home purchase contracts was not unconscionable based on the arbitration fees and costs; home purchasers who sought to avoid arbitration failed to meet their burden of proving arbitration would be prohibitively expensive, inasmuch as they failed to show that any arbitration fees or costs would be incurred, or that any such fees or costs would put the purchasers in a worse position that if they were to litigate their claims in court). As such, Friedlander will not suffer a financial hardship in having to arbitrate his claims. *See American Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 237 (2013) ("[T]he fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to purse the remedy.").

Moreover, the Arbitration Agreement states that the arbitrator is authorized to award all remedies available under the law, including attorneys' fees and costs to the prevailing party. *See* **§ 5, Ex.** 1. The Arbitration Agreement also requires the arbitrator to issue a written award stating the reasons for the final ruling. *Id*.

In sum, while Plaintiff has pointed to nothing specifically unconscionable, it is clear from a general review that nothing about the Arbitration Agreement is "overly harsh" or "one-sided." It generally incorporates JAMS Rules which have already been approved by the courts, frequently used by retired judge arbitrators, and sought after by attorneys.

## II.     CONCLUSION

Friedlander entered into a valid and enforceable agreement to exclusively submit the claim that he now seeks to assert in this action to mandatory and binding arbitration, he also agreed to litigate all of his claims on an individual basis. As such, Friedlander

should be compelled to arbitrate his FLSA claim and that claim should be dismissed pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure, or in the alternative, stay this case pending the completion of the arbitration in this matter.

DATED this 4th day of December 2023.

              FISHER & PHILLIPS LLP

           By  s/ Vance O. Knapp
             Vance O. Knapp
             3200 N. Central Avenue, Suite 1550
             Phoenix, Arizona 85012-2487
             Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

James Weiler
WEILER LAW PLLC
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
jweiler@weilerlwa.com
Attorneys for Plaintiffs

  s/ Dino Mehinovic